UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOANNA LEIGH and VIVIAN UNTERWEGER, | ) ) ) ) ) | |
| Movants, | ) ) | |
| v. | ) ) | CASE NO. 20-CV-10091 |
| SOCIAL SECURITY ADMINISTRATION OFFICE OF THE INSPECTOR GENERAL, | ) ) ) | |
| Respondent. | ) ) ) ) | |

**MOVANTS JOANNA LEIGH AND VIVIAN UNTERWEGER'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO QUASH**

Now come Movants Joanna Leigh and Vivian Unterweger, by and through undersigned counsel, and respectfully submit this Memorandum of Law in Support of their Motion to Quash two subpoenas *duces tecum* served by Respondent Social Security Administration Office of the Inspector General ("OIG") on Bank of America seeking production of documents relating to the Movants' accounts. As grounds and reasons therefor, Movants state that the subpoenas, which seek production of any and all records relating to the two accounts over a period spanning more than eight years, are seriously overbroad and that many of the requested documents are, therefore, not relevant to any legitimate inquiry by the OIG.

I.  *Background*

In 2013, Movant Joanna Leigh was disabled and applied for Supplemental Security Income

1

("SSI") disability benefits from the Social Security Administration ("SSA"). She received her first payment on or around October 1, 2013, and has continued to receive monthly payments in the amount of approximately $500 through the present day. On or around October 16, 2019, Ms. Leigh received notice from the SSA of the agency's belief that it had overpaid her by a total of $1,014 in two specific months (September 2018 and January 2019) during which Ms. Leigh's bank account balance exceeded SSA's $2,000 threshold. In each of those months, Ms. Leigh's balance was approximately $2,500. As Ms. Leigh explained in response to this notice, the issue arose because she has difficulty remembering to pay bills in a timely fashion as a result her disability.

Now, presumably because of the foregoing issue, arising in two specific months in a five-month time period about one year ago, the OIG seeks access to more than eight years of financial documentation relating to two accounts, only one of which was controlled by Ms. Leigh. Specifically, the subpoenas seek all records from Bank of America relating to accounts ending in numbers 1343 and 0972, between July 1, 2011 and the present, including not limited to:

- photocopies of signature cards
- monthly account statements
- all correspondence
- all automated teller machine transactions
- the front and back of all deposit items
- the front and back of all withdrawal items, including cancelled checks
- teller checks
- money orders
- cash withdrawals
- cash advances or other loans
- any other account records, documents, and/or pertinent account information not previously mentioned.

Because the documents sought far exceed the bounds of relevance, this Court should grant

the Movants' Motion to Quash.

II.     *Jurisdiction and Legal Standard*

This Court has jurisdiction to quash a subpoena issued pursuant to 5 U.S.C. App. 3 § 6(a)(4) and 12 U.S.C. § 3410. *See Greene v. Philadelphia Hous. Auth.*, 484 F. App'x 681, 684 & n.3 (3d Cir. 2012). In order to successfully oppose such a motion to quash, the agency must show that "the investigation will be conducted pursuant to a legitimate purpose, that the inquiry is relevant, that the information demanded is not already within the agency's possession, and that the administrative steps required by the statute have been followed." *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) (citation omitted).

III.    *Account Ending in 1343*

The first subpoena to Bank of America seeks all records relating to the account ending in 1343 from July 1, 2011 through the present. The OIG subpoena inaccurately suggests that this account is "[h]eld jointly by" the Movants. In fact, the account belongs to Ms. Leigh, and Ms. Unterweger has no involvement whatsoever in it. Moreover, some or all of the information relating to this account is already in the possession of the SSA, which has been continuously monitored to ensure compliance. Furthermore, relevant financial information has been fully disclosed as part of the application process and the ongoing redeterminations and reviews by the SSA relating to benefit eligibility. Indeed, the SSA has sent a notice of overpayment as a result of the account exceeding $2000 in assets for the months of September of 2018 and January of 2019. Ms. Leigh has requested a waiver in connection with such overpayments based on her inability to timely pay her financial obligations.

Now, the SSA seeks records (some or all of which it may already possess) for an eight-plus-year time period relating to this account. This request is seriously overbroad and is an unwarranted invasion of Mr. Leigh's privacy interest. As laid out above, the subpoena appears to stem from overpayments made to Ms. Leigh in two specific months occurring in a single five-month period. There is simply nothing about these events, and no further information provided in the OIG subpoena, justifying the agency's blanket access to almost a decade's worth of financial documentation. *See* 12 U.S.C. § 3410 (there must be "a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry…"). Indeed, the statute of limitations for administratively collecting overpayments and reopening determinations for good cause, *i.e.*, based on the discovery of new evidence, is generally two years. 20 C.F.R. § 416.1488-416.1489. The SSA has not proffered a reason for its investigation, but to the extent the agency seeks financial records in order to create new evidence to aid its collections efforts of potential further overpayments, the present subpoena is unnecessarily overbroad. Moreover, the beginning date for the requests (July 1, 2011) predates the beginning of Ms. Leigh's receipt of SSI benefits by over two years. To the extent that some more targeted subpoena might be warranted, perhaps one focusing on the five-month period during which the overpayments occurred or another time period within the SSA's self-prescribed statute of limitations, the agency would still have to show that it does not already have access to the information requested. Indeed, the fact that the SSA discovered the overpayments in the first instance is indicative of at least some level of access.

IV.   *Account Ending in 0972*

The second subpoena to Bank of America seeks all records relating to the account ending in 0972 from July 1, 2011 through the present. This account was opened by Ms. Unterweger, Ms. Leigh's mother, following her daughter's disability and has been dormant for years. Ms. Unterweger put her daughter on the account in order to provide her with access to funds in the event of Ms. Unterweger's unavailability. The account, however, never belonged to Ms. Leigh and she was never permitted limitless access to the funds. *See Rosenfeld v. Sec'y of Health & Human Servs.*, 563 F. Supp. 1192, 1196 (E.D.N.Y. 1983) ("To the extent that the cotenant has need of funds in the account reasonably deemed to be his and did not intend those funds as a gift to the SSI claimant, the Secretary may not attribute the funds to the claimant."). Indeed, only Ms. Unterweger had access to a debit card and checks associated with the account. Furthermore, upon information and belief, the SSA already possesses records for this account and has monitored its content. In a redetermination notice sent by the SSA, a second Bank of America account was listed by the SSA under Ms. Leigh's profile, which was valued at $0 and was purportedly active since April of 2015. Upon information and belief, this is the same account that the SSA intends to subpoena. While there may be a legitimate basis to obtain some records relating to this account, there is simply no reason for the SSA to invade Ms. Unterweger's private, financial documents for an eight-plus-year period, especially considering she is not a beneficiary of any income-based SSI benefits. Accordingly, the subpoena should respectfully be quashed or its scope limited to a more particularized, relevant time period.

V.  *Conclusion*

For all of the foregoing reasons, Movants respectfully request that the Court grant their Motion to Quash.

Respectfully Submitted,

JOANNA LEIGH AND VIVIAN UNTERWEGER,

By Their Attorneys,
**/s/ Michael Pabian**
Michael Pabian, Esq.
Mass. Bar No. 684589
Michael Pabian Law Office, LLC
pabianlaw38@gmail.com
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700

**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
Maksim Nemtsev, P.C.
menemtsev@gmail.com
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700

Dated: January 16, 2020

### CERTIFICATE OF SERVICE

I, Michael Pabian, hereby certify that on this date, January 16, 2020, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants and has been hand-delivered to Special Agent Brian Durand.